*1028 OPINION OF THE COURT
Paul L. Klein, J.
Tenant Walters has moved orally during this postjudgment hearing for a gag order to bar her former attorney from testifying in response to a subpoena served by petitioner’s attorney. At issue is a lawyer’s duty under the Code of Professional Responsibility to preserve the confidences of a client.[1]
Petitioner’s attorney seeks to establish through the mouth of his former adversary that the latter informed Ms. Walters, his then client, that judgment had been entered against her in this nonpayment summary proceeding. The stakes are high: issuance of the warrant ordinarily terminates the landlord-tenant relationship, and failure of Ms. Walters to have tendered the judgment amount timely would forfeit her right to continued occupancy, despite the fact that she now offers the full sum (RPAPL 749 [3]). But, if it be determined she had not been informed of the judgment, I could exercise discretionary authority to excuse her default. (Concourse Vil. v Herbert, NYLJ, Dec. 18, 1986, at 12, col 4 [App Term, 1st Dept].)
Ms. Walters makes exactly that claim: she knew nothing of the judgment until receiving a Marshal’s notice that eviction was imminent.
Petitioner’s attorney asserts service of judgment upon Ms. Walters was accomplished by sending Mr. Vernon, the former attorney, a copy with notice of entry — the proper (indeed the required) addressee for service (CPLR 2103 [b]). I find such service was made.
Thus, the ultimate question in this hearing is whether Mr. Vernon in turn notified Ms. Walters, and the threshold question is whether he may be compelled to testify in the face of her objection under Code of Professional Responsibility DR 4-101 (B).[2]
The confidentiality mandated by that proviso is a cherished cornerstone of our jurisprudence, grounded in the policy that clients must be encouraged to disclose all to their attorneys, so *1029 that the latter may render the most effective representation. (See, Code of Professional Responsibility EC 4-1; also, Opns Professional Ethics Comm of NY City Bar Assn No. 86-7.) Note, too, that the obligation to hold a client’s confidences inviolate expressly continues after the representation has terminated (Code of Professional Responsibility EC 4-6).
However, an escape hatch exists for the attorney charged by a client with misconduct: Code of Professional Responsibility DR 4-101 (C) (4) permits the attorney to testify in defense of the charge, even if the testimony breaches the confidentiality rule. Nor need the charge be formal or precise: where the fair implication of the client’s assertion tends to jeopardize the attorney’s position, the right of self-defense attaches. (Meyerhofer v Empire Fire & Mar. Ins. Co., 497 F2d 1190 [2d Cir], cert denied 419 US 998.)
Ms. Walters’s claim to have not received notice of the judgment entered against her obviously raises the possibility that Mr. Vernon neglected to carry out a professional responsibility, and triggers his right to voice a defense. However, the right to part the curtain of confidentiality must be sparingly applied. It extends only to the bare minimum "necessary to accomplish [its] purpose” (Opns Professional Ethics Comm of NY City Bar Assn No. 79-63).
As I noted earlier, Ms. Walters’s assertion raises only the possibility, not the certainty, that Mr. Vernon will stand accused of misconduct. For instance, if he were to testify that he had transmitted news of the judgment orally, her denial would place them eyeball to eyeball; if, on the other hand, he were to testify that notification had been by mail, her claim of nonreceipt would not necessarily point the finger of blame at him.[3]
Based upon the foregoing analysis, I preliminarily deny Ms. Walters’s application for a blanket bar to Mr. Vernon’s further testimony. Insofar as can yet be known, sufficient warrant exists for invocation of the shield provided by Code of Professional Responsibility DR 4-101 (C) (4).
However, it may be that at one or more points in his narrative it will become evident that he no longer requires the opportunity to defend himself. In that event, the parted curtain will be quickly closed.
*1030 I shall, therefore, treat the application as a continuing one, and will grant it if and when it appears appropriate to do so.
Before proceeding further, I must note that the principle of attorney-client privilege is so significant that, if asked, I am prepared to grant a brief continuance at this time to enable Ms. Walters’s counsel to seek Appellate Term review of my ruling. To implement that process, and to avoid imposing more delay than necessary upon the litigants, I have reduced this determination to writing, and embody it in appealable form; to wit: it is ordered that respondent-movant’s application to bar her former attorney, Darryl Vernon, from testifying in this hearing on behalf of the petitioner, be and it hereby is denied.

. The Code of Professional Responsibility is legally binding upon New York lawyers by virtue of 22 NYCRR 603.2, 691.2, 806.2 and 1022.17, as affirmed by the Legislature (L 1978, ch 156, § 13; see, Matter of Greene, 54 NY2d 118, 124-125 [1981], cert denied 455 US 1035).

. The privilege, of course, belongs to the client, not the attorney. Mr. Vernon has not offered to testify, but appears only because he was subpoenaed by petitioner’s attorney.

. For purposes of this motion, I assume that an attorney’s act of mailing anything to a client constitutes a confidential communication within the ambit of Code of Professional Responsibility DR 4-101.